Estate of John C. Whitworth, Deceased, Dorothy H. Whitworth v. Commissioner.
Estate of Whitworth v. Commissioner
Docket No. 89854.
United States Tax Court
T.C. Memo 1963-41; 1963 Tax Ct. Memo LEXIS 302; 22 T.C.M. (CCH) 177; T.C.M. (RIA) 63041; February 18, 1963
M. J. Stauffer, Esq., 165 E. Washington Row, Sandusky, Ohio, for the petitioner. Eugene S. Linett, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent has determined a deficiency in the estate tax of petitioner in the amount of $3,828.88. *303 The issues for decision are (1) whether decedent inter vivos transferred to his wife an interest in property as a gift in contemplation of his death under section 2035, Internal Revenue Code of 1954, and (2) whether he has made an inter vivos revocable transfer to her of an interest in property under section 2038 of the Code. Findings of Fact As stipulated the facts are found. Dorothy H. Whitworth is the duly appointed, qualified, and acting executrix of the estate of John C. Whitworth, deceased, under appointment of the Probate Court of Erie County, Ohio. She resides in Sandusky, Ohio. The Federal estate tax return for the estate of John C. Whitworth, deceased, was filed with the district director of internal revenue at Toledo, Ohio, on April 6, 1959. The decedent, John C. Whitworth, died a resident of Ohio on January 4, 1958, at the age of 62, leaving as his surviving spouse, Dorothy H. Whitworth, executrix herein. Prior to his death, decedent had been employed for more than 35 years in various capacities by The American Crayon Company, an Ohio corporation at Sandusky, Ohio, hereinafter referred to as Crayon, and The Joseph Dixon Crucible Company, *304 a New Jersey corporation at Jersey City, New Jersey, hereinafter referred to as Dixon (into which Crayon was merged on January 30, 1957). On March 19, 1937, Crayon adopted a pension plan for officers and their widows providing, inter alia, for payments to widows of officers whose employment with the company had exceeded 30 years but had not exceeded 45 years, of $250 per month for 18 months, beginning on the first day of the first month following the date of death of the officer. Although the pension plan was subsequently and variously amended, the death and incapacity benefits therein were never changed. On January 1, 1952, decedent entered into an employment agreement with Crayon. The agreement provided for his employment as an executive for a term of 5 years, beginning on January 1, 1952, and ending on December 31, 1956, at a salary of not less than $15,000 per year. On April 30, 1953, the decedent entered into an amendment to the January 1, 1952, employment agreement with Crayon. This amendment provided: (a) that no termination of the employment agreement, by any means whatsoever, would affect Whitworth's rights under the company's pension plan, adopted on March 19, 1937. *305 (b) that, notwithstanding termination of the employment agreement, by any means whatsoever, the company would - pay to the widow of John C. Whitworth $250.00 per month for the period of ten (10) years from and after Whitworth's death, and the sum of $175.00 per month thereafter for the remainder of the widow's life. * * * (c) that by signing her name to the agreement, Dorothy H. Whitworth, wife of John C. Whitworth, expressly waived any rights to payments which might become due to her under the company's pension plan, adopted on March 19, 1937. Prior to October 1, 1956, Crayon had contemplated a merger with Dixon and for that reason five of Crayon's executives, including decedent, were concerned with their continued employment, the retirement rights and the widows' pension benefits accrued under their existing employment contracts. In the merger, Dixon was to assume the obligations of Crayon including those arising under existing employment contracts. With Dixon's knowledge and consent, the five executives, including decedent, entered into employment agreements with Crayon on October 1, 1956, which superseded all former such agreements. Although the new agreements provided for *306 an extension of the employment beyond the date of the merger and to an extent altered other terms of such employment, the provisions of the old agreement relating to widows' rights to benefits at the death of their respective husbands were included nearly verbatim in the new contracts. Insofar as the 1952 (as amended) and 1956 contracts related to benefits to decedent's wife, their wording was as follows: 1952 8. * * * Not withstanding any termination of this Agreement of Employment, pursuant to this paragraph or otherwise, Whitworth's rights under Paragraph 9 hereof and his rights to payments to be paid his wife under paragraph 10 hereof, shall not be affected but shall continue in full force and effect. * * *
10. The Company agrees to pay to the widow of John C. Whitworth $250.00 per month for the period of ten (10) years from and after Whitworth's death, and the sum of $175.00 per month thereafter for the remainder of the widow's life. Such payments shall be paid on or before the tenth (10th) day of each month and shall cease upon the death of said widow, and shall be subject to such reasonable rules and regulations as shall be adopted by the Board of Directors of *307 the Company from time to time hereafter. 11. Dorothy H. Whitworth, wife of John C. Whitworth, by signing her name at the foot of this Agreement, expressly waives any rights to payments which may or might hereafter become due to her under Paragraph 1 of the Company's pension plan adopted March 19, 1937, and amended March 21, 1950. 1956 6. The Company will not consolidate with or merge into another corporation or sell all or substantially all of its assets to another corporation unless such other corporation shall assume this agreement, and upon such assumption Whitworth and the successor company shall become obligated to perform the terms and conditions hereof. * * *
8. Whitworth shall be entitled to his compensation hereunder regardless of illness or other incapacity and regardless of whether or not he devotes full time to the performance of his services hereunder. Notwithstanding Whitworth's death during the term of this Supplementary Agreement, his legal representative shall be entitled to receive his salary or other compensation throughout the balance of the term of this Supplementary Agreement. Notwithstanding the death of Whitworth, his rights to payments to be *308 paid his wife under Paragraph 10 hereof shall not be affected but shall continue in full force and effect. 9. Should Whitworth survive the term of this Agreement, nothing herein contained shall in any way modify, invalidate, reduce or affect the rights of Whitworth under the Retirement Plan approved by the Board of Directors March 19, 1937 and amended under date of August 17, 1949, confirmed and ratified by the stockholders of the Company on March 21, 1950; and further amended by the Board of Directors on April 28, 1955, and further confirmed and ratified by the stockholders of the Company on March , 1956, regardless of when or how Whitworth's services terminate; nor shall the rights of Mrs. Whitworth under Paragraph 10 hereof in any way be reduced or affected. 10. The Company further agrees to pay to the widow of John C. Whitworth $250.00 per month for the period of ten (10) years from and after Whitworth's death, and the sum of $175.00 per month thereafter for the remainder of the widow's life. Such payments shall be paid on or before the tenth (10th) day of each month and shall cease upon the death of said widow, and shall be subject to such reasonable rules and regulations *309 as shall be adopted by the Board of Directors of the Company from time to time hereafter. 11. Dorothy H. Whitworth, wife of John C. Whitworth, by signing her name at the foot of this Agreement, expressly waives any rights to payments which may or might hereafter become due to her under Paragraph 1 of the Company's pension plan adopted March 19, 1937, as amended as referred to above. 12. This Supplementary Agreement of Employment shall be subject to termination at any time by the Board of Directors of the Company, if and when the proposed merger with Joseph Dixon Crucible Company does not in the judgment of the Board of Directors become legally effective. It is expressly understood that the Joseph Dixon Crucible Company has knowledge of this as well as other obligations of the Company which it will cause to be paid as obligations of this Company. In accordance with the agreements, decedent's widow has been receiving the pensions provided therein since his death on January 4, 1958. The fair market value, for Federal estate tax purposes, as of January 4, 1958, of the right to receive the payments provided for in paragraph 10 of the October 1, 1956, employment agreement is $29,205.38. *310 Dorothy H. Whitworth was the principal and residuary beneficiary of decedent's last will and testament, executed on October 10, 1955, which was admitted to probate in the Probate Court of Erie County, Ohio. In 1954 decedent had suffered a slight stroke which from then to his death slowed and to some extent otherwise impaired his bodily function and efficiency. At the time of execution of the 1956 employment contract he was also suffering from other diseases associated with advancing age. Although he was generally aware of his bodily impairment, he was not aware of the presence of these diseases, nor was he at that time more than normally concerned with his impending death. He performed his services for Crayon and later Dixon on a fulltime basis. Ultimate Findings Decedent's widow's rights to receive pension benefits subsequent to his death were acquired by virtue of the 1952 contract of employment and were not transferred to her under the terms of the 1956 employment agreement. Decedent did not make a transfer of an interest in property to his wife in contemplation of his impending death by his execution of the 1956 contract of employment. Decedent did not during his life *311 have a power to revoke or terminate his widow's pension rights within the meaning of section 2038(a)(1) of the 1954 Code. Opinion In substantiation of this estate tax deficiency, respondent takes alternative positions under the 1954 Code. Under section 2035[1] he contends that the 1956 transactions between decedent and Crayon regarding his employment contract constituted an inter vivos transfer by decedent to his wife of an interest in property the value of which interest is includable in his estate as a gift in contemplation of his death. Under section 2038 [2] he contends the same transaction constituted a revocable (by decedent) transfer of the same interest to his wife, the value of the transferred interest being includable in his estate. We think respondent must fail under either contention. *312 Each of the transactions set forth in our findings relating to decedent's employment contract with Crayon is clearly but a part of an overall change in the employment relationship between Crayon and its five executives. No such transaction has any appearance of having been brought about by any special or particular relationship of decedent and his employer or by any abnormal preoccupation by decedent with his impending death. The 1956 substitution of a new contract of employment with respect to the same five employees, including decedent, was obviously induced, not by decedent's concern with his health, but rather by the concern of all five with their continued employment after the merger of Crayon with Dixon and the continuation of their retirement rights and the pension rights of their widows which had existed unchanged at least since 1952. It is true that in 1954 decedent had suffered a slight stroke, that he was to some degree also suffering thereafter from various diseases associated with advancing age, and that he was aware generally of some impairment of his physical efficiency from that date until his death, but we cannot conclude that these facts were the motive for any *313 act of his relating to either the 1952 or 1956 employment contract transactions. The record discloses that he continued to carry out his normal duties with Crayon and that, during all periods involved, he continued to do the full-time work of an executive. In the estimation of his physician, who had long acquaintance with decedent both as a friend and doctor, although decedent had been concerned with his health generally for years, he was not in 1956 motivated to more than a normal degree by fear of his impending death. Assuming arguendo that the 1956 employment contract constituted a "transfer" of an interest in property under section 2035, this record affords ample evidence to overcome the presumption there raised that the "transfer" was in contemplation of decedent's death. Section 2038 provides no support for this deficiency. Respondent reasons that the 1956 contract transferred to decedent's wife rights which were revocable by decedent prior to his death in that he at all times could have ceased employment by Crayon or could at any time breach the contract, thus terminating any rights thereunder which had been "transferred" to his wife. To follow respondent's reasoning leads *314 to an absurd result not required or permitted in the construction of a statute. To do so would be tantamount to holding that the value of all rights of widows to pension benefits arising under their husbands' employment contracts must be included in their deceased husbands' estates. All employees are able to cease their employment since the abolition of slavery in this country and certainly anyone may breach his contract. Indeed, were decision to turn upon the latter point, the value of no widow's right to pension arising under a written contract of any kind wherein her husband was a party could escape inclusion in the deceased husband's estate. Although section 2038 is broad in its provisions with respect to the source of the husband's power to revoke, we cannot conclude that Congress intended the effect above noted. In any event, it is clear from the very terms of the 1952 contract that, should decedent cease his employment by Crayon or terminate his employment agreements for any reason, "his rights to payments to be paid his wife * * * shall not be affected but shall continue in full force and effect." The 1956 contract is clearly intended as a supplement to that of 1952, and it *315 follows that the rights above noted contained in the former are carried over and included by implication in the latter even though the latter contract, by its terms, supersedes the former. We can find no possibility here that in any circumstance the widow's benefits under the contracts in question could revert to her husband during his life, to his estate at his death, or to any other beneficiary designated by him. The benefits either went to the widow or, in case she predeceased her husband, they went to no one. Decision will be entered for the petitioner. Footnotes
1. SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. (a) General Rule. - The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. (b) Application of General Rule. - If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death. ↩
2. SEC. 2038. REVOCABLE TRANSFERS. (a) In General. - The value of the gross estate shall include the value of all property (except real property situated outside of the United States) - (1) Transfers after June 22, 1936. - To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.↩